UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHGATE LTC MANAGEMENT, LLC, et al. | Case No. 07-11068 REL |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------x

## MOTION FOR AN ORDER DISMISSING CASES, DIRECTING DISTRIBUTION OF FUNDS AND GRANTING ANCILLARY AND RELATED RELIEF

Mark I. Fishman, Chapter 11 Trustee in these cases (the "Trustee"), respectfully requests entry of the attached proposed form of order dismissing these cases, directing the distribution of funds held by the Trustee and granting ancillary and related relief. In support of this motion (the "Motion"), the Trustee states as follow:

### Background

1. These jointly administered cases were commenced by the filing of voluntary petitions on April 16, 2007. At that time, the debtors' four nursing homes were being operated by a state court receiver, who remained in place during these cases and continued to operate the nursing homes.

2. By order entered May 17, 2007, this Court directed the appointment of a trustee.

3. On May 21, 2007, the Trustee was appointed. This Court approved the appointment on the same day.

4. As prescribed by this Court's order with respect to post petition financing and use of cash collateral, the Trustee immediately embarked upon a sale process for sale as a going

concern of the debtors' nursing homes.

5. Bidding and auction procedures were authorized by order of this Court on July 2, 2007 (the "Initial Sale Process").

6. In part because of potential Medicaid recoupment liabilities which could be imposed upon a purchaser, including liability for unpaid gross receipts taxes, no bids were submitted during the Initial Sale Process.

7. With the cooperation of the New York State Department of Health ("DOH") and its counsel both in the Office of the Attorney General and within the DOH itself, the Trustee and the debtors' secured creditor, General Electric Capital Corporation ("GECC"), were successful in limiting the potential recoupment liability of prospective purchasers so that a new sale process could be established.

8. In November, 2007, the Trustee, representatives of GECC, and counsel for the Creditors Committee and for the DOH met with several prospective purchasers in Albany, New York (the "Second Sale Process").

9. The Second Sale Process eventually culminated in the execution of a sale contract between the Trustee and a stalking horse purchaser, subject to higher and better offers.

10. In or about July, 2008, Oasis HC, LLC ("Oasis") submitted a higher offer than the contract price between the Trustee and the stalking horse purchaser.

11. On August 12, 2008, an auction was conducted in this Court (the "Auction").

12. At the Auction, Oasis increased its offer to $23.3 million dollars for the purchase of all four of the debtors' nursing homes and was declared the successful bidder.

13. The Trustee and Oasis, together with counsel for GECC and for the Creditors Committee, thereupon negotiated a purchase agreement (the "Purchase Agreement").

14. The Purchase Agreement was approved by order of this Court on August 28, 2008.

15. The Purchase Agreement was expressly subject to Oasis' ability to obtain one or more Certificate(s) of Need for its acquisition of the debtors' nursing homes.

16. The Purchase Agreement required Oasis to post additional monetary deposits each month after the expiration of one year until Oasis obtained the required Certificate(s) of Need. The Purchase Agreement also imposed a two-year deadline upon Oasis to obtain the Certificate(s) of Need before falling into default and required Oasis to close its purchase within 30 days after obtaining the Certificate(s) of Need.

17. Commencing in or about August, 2009, Oasis each month placed an additional monetary deposit with the Trustee.

18. Oasis finally obtained the necessary Certificate(s) of Need at approximately the end of July, 2010 and, through its designees, closed its purchase of the debtors' nursing homes as a going concern on or about August 31, 2010.

**Status of the Cases**

19. In connection with the closing by the Trustee of his sale of the debtors' nursing homes to Oasis and/or its designees, and pursuant to an order of this Court entered on August 11, 2010, the Trustee paid the great majority of the purchase price to GECC on account of GECC's mortgage and security interest in the debtors' assets.

20. While the Trustee retained certain monies designated for the estate, for professional fees, and/or for general unsecured creditors, most of those monies have been distributed to professionals and others pursuant to, <u>inter alia,</u> this Court's orders of September 29, 2010 and November 22, 2010 with respect to the payment of professional fees.

21. The Trustee and/or his law firm are presently holding the approximate amount of

3

$41,000 of estate funds as well as holding in escrow the amount of $200,000 for general, unsecured creditors, the approximate amount of $87,000 for the payment of certain administrative vendor claims if not paid by Oasis and the amount of $75,000.00 in settlement funds, pending documentation and approval.

22. Because substantially all of the debtors' assets have been sold, no business is being conducted by or for the estates, and only limited funds remain on hand, as compared to the value of the assets previously owned by the debtors, the Trustee submits that no further purpose would be served by retaining these cases as active Chapter 11 cases as they approach their fourth anniversary date.

23. The limited amount of funds remaining on hand, even if enhanced through further litigation, does not warrant the filing of a Chapter 11 plan and the attendant confirmation process. Moreover, it is not clear that all of the confirmation standards of Section 1129 of the Bankruptcy Code can strictly be met in light of the presence of various priority claims.

24. At the same time, conversion of these cases to cases under Chapter 7 of the Bankruptcy Code at this late date would be wasteful and inefficient and could delay payments to creditors.

25. Both the Court and the United States Trustee have expressed a preference for dismissal of these cases as the means for their efficient disposition.

**The Proposed Order**

26. In light of the foregoing history and current status of these cases, the Trustee has prepared the attached proposed form of order (the "Proposed Order") which, if entered, would provide for, inter alia, (a) the dismissal of these cases, (b) procedures for distribution of all funds, (c) retention of jurisdiction over existing adversary proceedings and (d) resolution of outstanding

administrative matters, none of which require the umbrella of a continuing Chapter 11 case.

27. The Proposed Order, if entered, will enable all outstanding matters to be completed and all funds to be distributed with the smallest possible time expenditure and cost for the Court, the Trustee, counsel and the United States Trustee.

28. The Trustee respectfully submits that the Proposed Order presents the best resolution of these cases in their present posture.

**WHEREFORE**, the Trustee requests the entry of the Proposed Order and such other and further relief as is just and proper.

Dated: February 16, 2011
New Haven, Connecticut

                MARK I. FISHMAN, ESQ.,
                CHAPTER 11 TRUSTEE

By: _____
     Mark I. Fishman, Esq.
     Neubert, Pepe, & Monteith, P.C.
     195 Church Street, 13th Floor
     New Haven, Connecticut 06510
     mfishman@npmlaw.com
     Attorneys for Trustee